1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

WILLIE LEE JEFFERSON,            )       3:07-CV-00033-BES (RAM)
                                 )
            Plaintiff,           )
                                 )
      vs.                        )       **REPORT AND RECOMMENDATION**
                                 )       **OF U.S. MAGISTRATE JUDGE**
JAMES BENEDETTI and DONALD       )
HELLING,                         )
                                 )
            Defendants.          )
_____)

        This Report and Recommendation is made to the Honorable Brian E. Sandoval, United

States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant

to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

        Before the court is Defendants' Motion for Summary Judgment (Doc. #20).  Plaintiff

failed to file an opposition.

## I.  PROCEDURAL BACKGROUND

        Plaintiff filed his initial Complaint on April 17, 2007 (Doc. #5).  Defendants filed the

instant Motion for Summary Judgment on October 29, 2007 (Doc. #20).  On December 3,

2007, after Plaintiff failed to file an opposition to the instant motion, this court gave Plaintiff

an additional twenty (20) days in which to file his opposition to and including December 23,

2007 (Doc. #24).  The court cautioned Plaintiff that his failure to file an opposition constitutes

a consent to granting of the motion (*Id.*).  Plaintiff nevertheless failed to file an opposition.

Then, on January 10, 2008, this court gave Plaintiff another additional twenty (20) days in

which to file his opposition to and including January 30, 2008 (Doc. #25). The court advised

1   Plaintiff that his failure to file an opposition will result in a Report and Recommendation that

2   this matter be dismissed (*Id*.).  Plaintiff again failed to file his opposition.

3   It appears, rather than file an opposition as directed by this court, Plaintiff elected to

4   instead file the following pleadings: a Motion for Writ of Mandamus on January 22, 2008

5   (Doc. #27); a reply to Defendants' response to Plaintiff's writ of mandamus on February 11,

6   2008 (Doc. #29); a Motion for Leave to File Supplemental Reply Brief on February 13, 2008

7   (Doc. #30); and a reply to Defendants' response to Plaintiff's motion to file a supplemental

8   reply on March 5, 2008 (Doc. #34).  Thus, the court notes Plaintiff has shown no just cause

9   for failing to abide by the court's directive and file an opposition to the instant motion.

10  Accordingly, as cautioned by this court, Plaintiff's failure to file an opposition is construed

11  as a consent that Defendants' motion is meritorious and should be granted, particularly in

12  light of the numerous pleadings Plaintiff did file before and after the additional forty (40) days

13  granted to file said opposition.

14  **II.  DISMISSAL UNDER LR 7.2(d) AND FED. R. CIV. P. 41(b) FOR FAILURE TO**

15  **FILE AN OPPOSITION**

16  Under Local Rules of Practice in the District of Nevada, "[t]he failure of an opposing

17  party to file points and authorities in response to any motion *shall* constitute a consent to the

18  granting of the motion." LR 7.2(d) (emphasis added).  Furthermore, FED. R. CIV. P. 41(b)

19  allows for the dismissal of an action where the plaintiff fails to comply with rules or orders

20  of the court.  Here, Plaintiff has failed to obey the court's Orders of December 3, 2007 (Doc.

21  #24) and January 10, 2008 (Doc. #25).  Accordingly, the case should be dismissed pursuant

22  to LR 7.2(d) and FED. R. CIV. P. 41(b).  However, under Ninth Circuit case law, a *pro se*

23  plaintiff's complaint must be construed liberally and can only be dismissed where it appears

24  certain from the complaint that Plaintiff would not be entitled to relief. *Ortez v. Washington*

25  *County*, 88 F.3d 804, 807 (9th Cir. 1996).  While the complaint must be construed liberally

26  in Plaintiff's favor, *pro se* litigants are still bound by the rules of procedure. *Ghazali v. Moran*,

27  46 F.3d 52, 54 (9th Cir. 1995) (per curiam).

28

1    Failure to follow LR 7.2(d) and FED. R. CIV. P. 41(b) is grounds for dismissal; however,

2    before dismissing an action pursuant to LR 7.2(d), the district court is required to weigh the

3    following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's

4    need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy

5    favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."

6    *Ghazali*, F.3d at 53 (citing *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)).[1]

7    The first two factors weigh heavily in favor of dismissal as this case has "dragged on"

8    for almost a year and a half. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)

9    (concluding the first two factors weighed in favor of dismissal where the case had "dragged

10    on for over a year and a half."). The initial Complaint was filed approximately fifteen (15)

11    months ago (Doc. #5).

12    Regarding the third factor, Plaintiff was given ample opportunity to respond to the

13    instant motion, including two (2) extensions of time, and yet he failed to oppose the motion.

14    This court twice informed Plaintiff of the consequences for failing to oppose, including

15    warning Plaintiff that the failure to file an opposition would be construed as a consent to the

16    granting of Defendants' motion and, on January 10, 2008, this court advised Plaintiff that

17    his third failure to oppose *will* result in a Report and Recommendation that this matter be

18    dismissed (Doc. #25). It would be prejudicial to Defendants to allow this case to continue to

19    "drag on" and subject Defendants to the additional expense of litigation under these

20    circumstances where Plaintiff has repeatedly failed to respond to Defendants' arguments for

21    summary judgment and repeatedly failed to respond to the court's directives.[2]

22    The fifth factor, regarding the availability of less drastic sanctions, also weighs heavily

23    in favor of granting the instant motion. The court warned Plaintiff on two (2) occasions that

24

25    [1] *Ghazali* applied the District of Nevada Local Rule 140-6, which is the identical predecessor to LR 7-2(d).

26    [2] The Court notes, on July 16, 2007, Plaintiff filed a motion regarding Defendants' alleged failure to timely
file a responsive pleading, requesting the court grant his "motion" citing to LR 7.2 (Doc. #13). This motion
evidences Plaintiff's understanding of the local rules and the court's warnings and directives regarding his failure
27    to file an opposition.

28                                                                3

he risked dismissal if he failed to file a response to the instant motion and the court gave Plaintiff two (2) additional opportunities (approx. forty (40) additional days) to oppose the motion, which ultimately gave Plaintiff three (3) full months to respond. Plaintiff repeatedly ignored the court's orders; therefore, there is no reason to assume Plaintiff will suddenly comply with another order of this court for less drastic sanctions, particularly where Plaintiff was made fully aware, twice, of the drastic consequences of dismissal and shows a clear understanding of said consequences.

Finally, the fourth factor, public policy favoring disposition on the merits, requires the court consider the meritoriousness of Plaintiff's claims and Defendants' defenses. Accordingly, this Report and Recommendation considers the merits of Defendants' Motion for Summary Judgment (Doc. #20).

### III.  STANDARD FOR SUMMARY JUDGMENT

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings,

but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Liberty Lobby*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

## IV. DISCUSSION

Plaintiff is a prisoner in Ely State Prison (ESP) in Ely, Nevada in the custody of the Nevada Department of Corrections (NDOC) (Doc. #20). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging state officials violated his Eighth Amendment right against cruel and unusual punishment and his Fourteenth Amendment right to due process (Doc. #4).[3] Plaintiff names the following Defendants in their individual and official capacities: James Benedetti and Donald Helling (*Id.*).[4]

---

[3] Plaintiff's complaint includes a First Amendment claim (Count III); however, that claim relates to unnamed parties who were subsequently terminated from this suit; therefore, Count III is not a valid claim.

[4] Plaintiff names Adam Endell and E.K. McDaniels as Defendants in this suit; however, the court terminated these parties on April 17, 2007.

5

Plaintiff alleges that, in June, 2006, he was involuntarily transferred from Nevada State Prison (NSP) to Northern Nevada Correctional Center ( NNCC), Mental Health Unit (MHU) and was never afforded a classification hearing or a due process hearing (*Id*. at 3). Plaintiff further alleges he was stripped of all clothing and subjected to "four (4) points restraints" without being given a medical examination by medical personnel (*Id*.). Plaintiff asserts he was naked on a plastic mattress without any bedding in a freezing cold cell for over twelve (12) hours, that he had to be fed by an ex-prison guard claiming to be a medical orderly, and that he was unable to use the bathroom (*Id*. at 3-4).

Plaintiff next alleges he was placed into a seclusion cell without a medical examination for approximately six (6) days until he was brought up to "classification" without inmate counsel or staff advisory and where Defendant Benedetti and others apparently threatened to go to "four (4) point restraint" until he agreed to give up the other half of the razor blade, which Plaintiff alleges he did give up (*Id*. at 4). Plaintiff further alleges he was placed in four (4) point restraints for approximately nine (9) hours and forced to take psychotropic medication every fifteen (15) minutes by nurses (*Id*.). Plaintiff then asserts he was placed in another seclusion cell until he went to "classification" a week later in order to be taken off the involuntary administration of psychotropic drugs, which was subsequently denied (*Id*.).

Finally, Plaintiff alleges he was discharged by Defendant Helling and told he was being sent to ESP (*Id*.). Plaintiff asserts he was never afforded a due process hearing prior to his transfer to ESP and, upon transfer, he was placed in administrative segregation (*Id*.).

Defendants assert they are not "persons" who can be sued under § 1983 and Plaintiff has failed to state a an Eighth Amendment claim because he was properly transferred to a mental health unit and subjected to a cavity search and four-point restraint because he attempted to hide razor blades in his body and has made several attempts to cut himself or others with those blades (Doc. #20). Defendants further assert Plaintiff was not forcefully medicated, although such medication was authorized under the circumstances (*Id*.). Finally, Defendants assert Plaintiff has failed to state a Fourteenth Amendment claim because his

1  transfer to the MHU was proper, he was not forcefully medicated, and he has no liberty
2  interest in his transfer to ESP (*Id.*).

3  The first inquiry must be whether there was, in fact, a constitutional violation of
4  Plaintiff's rights. This issue is dispositive of Plaintiff's claims and, if there was no violation,
5  the court must grant summary judgment on the merits and need not discuss Defendants'
6  remaining argument. Thus, the court addresses this issue first.

7  **A.   EIGHTH AMENDMENT**

8  Under the Eighth Amendment, where inmates challenge prison conditions, the
9  Supreme Court has applied a "deliberate indifference" standard. "Whether one characterizes
10  the treatment received by [the prisoner] as inhumane conditions of confinement, failure to
11  attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate
12  indifference' standard articulated in Estelle." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (citing
13  *LaFaut v. Smith*, 834 F.2d 389, 391-392 (1987)).

14  Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060
15  (9th Cir. 2004). A showing of negligence is insufficient to establish a violation under the
16  Eighth Amendment. *Id.* Instead, Plaintiff must meet two (2) requirements in order to show
17  Defendants acted deliberately indifferent by subjecting him to inhumane conditions of
18  confinement. First, Plaintiff must show, as an objective matter, that Defendants' actions rise
19  to the level of a "sufficiently serious" deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834
20  (1994); see also, *Rhodes v. Chapman*, 452 U.S. 337, 345-346 (1981); *Wilson v. Seiter*, 501 U.S.
21  294, 298 (1991). Second, as a subjective matter, Plaintiff must show Defendants had a
22  "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, Plaintiff must
23  show Defendants knew he faced a substantial risk of harm and disregarded that risk by failing
24  to take reasonable measures to abate it either by their actions or inactions. *Id.* at 837. Plaintiff
25  need not show Defendants acted or failed to act believing that harm actually would befall him;
26  it is enough that Defendants acted or failed to act despite having knowledge of a substantial
27  risk of serious harm. *Farmer*, 511 U.S. at 842.

28  7

The crux of Plaintiff's complaint involves involuntary transfers to the MHU at NNCC without a hearing prior to the transfers and the use of four-point restraints on Plaintiff after the transfers (Doc. #5). The record shows Plaintiff has a very long and extensive history of mental health issues dating back to 1976, including issues with depression, suicidal ideation, self-mutilation and extreme manipulative behaviors (including swallowing razor blades and hiding razor blades in his penis) in attempts to get to the infirmary (Doc. #20 at 2). Defendants assert Plaintiff was involuntarily transferred to the MHU amidst high risk circumstances due to Plaintiff's numerous previous attempts to hide razor blades on his body and his several attempts to cut himself or others with those razor blades (*Id.* at 7). Defendants further assert Plaintiff was properly placed in four-point restraints and subjected to a cavity search due to threats to himself and others with a razor blade on his body (*Id.*).

The record clearly shows that Plaintiff does, in fact, hide razor blades on his body, as Plaintiff admits that he "[gave] up the other half of the razor blade" when threatened with four-point restraints (Doc. #5 at 4). Thus, under these facts, Defendants' actions were certainly warranted. Furthermore, the record shows Plaintiff has been involuntarily transferred to MHUs on at least nine (9) previous occasions for the same or similar conduct and, apparently, on each occasion Plaintiff either did, in fact, have razor blades on his body or made threats that he had a razor blade on his body in attempts to manipulate prison officials into giving into his requests, whether it be for a television or a transfer into or out of the general population (Doc. #21 *SEALED*, Exh. A).

Plaintiff has not shown Defendants acted with deliberate indifference by transferring him to the MHU or using four-point restraints on him where he has an extensive history of self-mutilating himself, hiding razor blades on his body, and manipulating prison officials by threatening to cut himself or others with those razor blades. Plaintiff has failed to show a "sufficiently serious deprivation" or that Defendants acted with a "sufficiently culpable state of mind." Defendants had every reason to believe Plaintiff would harm himself or others, as the record indicates Plaintiff had to be involuntarily transferred to the MHU on at least nine (9) prior occasions for the same or similar conduct from approximately 1993 through 2004

8

1   and Plaintiff has, in fact, harmed himself with razor blades on numerous occasions (Doc. #20

2   at 2).   Accordingly, Plaintiff has failed to state an Eighth Amendment claim and Defendants'

3   request for summary judgment should be **GRANTED**.

4   **B.   FOURTEENTH AMENDMENT**

5       The Fourteenth Amendment prohibits any state from depriving "any person of life,

6   liberty, or property, without due process of law," and protects "the individual against arbitrary

7   action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).   Those who seek to

8   invoke due process protections must establish one of these interests it at stake. *Wilkinson v.*

9   *Austin*, 545 U.S. 209 (2005).

10      An examination of Plaintiff's Due Process claims requires the court answer two (2)

11  questions: 1) Is there such a liberty interest? and 2) If so, what process is due? *Neal v.*

12  *Shimoda*, 131 F.3d 818, 827 (9th Cir. 1997).   A liberty interest may arise from either of two

13  (2) sources: the due process clause or state law. *Id.*; see also *Hewitt v. Helms*, 459 U.S. 460,

14  466 (1983); *Toussiant v. McCarthy*, 801 F.2d 1080, 1089 (9th Cir.1986), cert. denied, 481

15  U.S. 1069 (1987).   In the prison setting, a liberty interest arising from the Constitution itself

16  is implicated when conditions of confinement "exceed[] the sentence in such an unexpected

17  manner as to give rise to protection by the Due Process Clause of its own force ..." *Sandin v.*

18  *Conner*, 515 U.S. 472, 484 (1995); see also *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer

19  to mental hospital); *Washington v. Harper*, 494 U.S. 210, 221-222 (1990) (involuntary

20  administration of psychotropic drugs).   A state created liberty interest, on the other hand, is

21  "generally limited to freedom from restraint which, while not exceeding the sentence in such

22  an unexpected manner as to give rise to protection by the Due Process Clause ... nonetheless

23  imposes atypical and significant hardship on the inmate in relation to the ordinary incidents

24  of prison life." *Sandin,* 515 U.S. at 484.

25  ///

26  ///

27

28                                      9

1   Here, Plaintiff essentially alleges Defendants violated his Due Process rights when they

2   involuntarily transferred him to the MHU without a hearing prior to the transfers, when they

3   forcefully medicated him, and when they transferred him to ESP (Doc. #5; Doc. #20 at 6-9).

4       1.      Involuntarily transferred to MHU without a prior hearing

5   Defendants assert Plaintiff's transfers to the MHU were under high risk circumstances

6   where Plaintiff posed a danger to himself or others (Doc. #20 at 7).

7   Under Administrative Regulation 653, an inmate who is considered a risk to himself

8   or others and is transferred under Category I ("Immediate, i.e. high risk circumstances") has

9   no right to challenge the transfer *before* being transferred to the MHU (*Id.*). AR 653.1.7.

10  dealing with emergency transfers provides: "In case of emergency, where the Mental Health

11  Team at the institution considered the inmate an immediate, serious danger to themselves

12  or others, the move may be made upon verbal approval by the Medical Director/designee.

13  The verbal approval must be documented. This constitutes an admitting order. Following an

14  emergency transfer or internal institutional housing change, the inmate will be provided with

15  a classification hearing *within five (5) working days of the transfer*." *Id.* (emphasis added).

16  The record indicates Plaintiff was provided classification hearings subsequent to his

17  transfers as mandated in AR 653. Although Plaintiff asserts in his complaint that he was

18  entitled to due process hearings prior to any involuntary transfers, the record clearly shows

19  Plaintiff's transfers to the MHU did not involve a move to a separate hospital, nor did they

20  subject him to the use of involuntary medication (*see* Doc. #21 *SEALED*, Exh. A at 12, noting

21  Plaintiff's failure to oppose Defendants' assertion that he was never actually involuntarily

22  medicated during his transfers to the MHU in question) or any type of behavior modification

23  programs, as  would give rise to the Due Process Clause of its own force. *Cf. Vitek*, 445 U.S.

24  480.  Furthermore, there is no evidence that the transfers imposed any "atypical and

25  significant hardship[s] in relation to the ordinary incidents of prison life." *See Sandin*, 515

26  U.S. at 484. To the contrary, the record shows Plaintiff's transfers to the MHU were justified

27  and Plaintiff was fully aware of the consequences of his behavior, as he was transferred for

28

1    the same or similar behavior on numerous prior occasions.  Under these facts, Plaintiff has

2    failed to show Defendants violated his due process rights by involuntarily transferring him

3    to the MHU under emergency circumstances without a prior hearing.  Accordingly,

4    Defendants' request for summary judgement on Plaintiff's Fourteenth Amendment claims

5    dealing with the transfers to the MHU should be **GRANTED**.

6             2.    Involuntarily medicated

7              "The due process clause of the Fourteenth Amendment substantively protects a person's

8    rights to be free from unjustified intrusions to the body, to refuse unwanted medical treatment

9    and to receive sufficient information to exercise these rights intelligently." *Benson v. Terhune*,

10   304 F.3d 874, 884 (9th Cir. 2002) (citing *White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990))

11   (internal citations omitted).  In the prison setting, "an inmate's interests are adequately

12   protected, and perhaps better served, by allowing the decision to medicate to be made by

13   medical professionals rather than a judge." *Washington v. Harper*, 494 U.S. 210, 231 (1990).

14   "Though it cannot be doubted that the decision to medicate has societal and legal implications,

15   the Constitution does not prohibit the State from permitting medical personnel to make the

16   decision under fair procedural mechanisms. *Id*.

17             Here, the record indicates, Plaintiff was referred to the Forced Med Panel, which was

18   held on June 23, 2005, and was determined to be a candidate for forced medication (Doc. #21

19   *SEALED*, Exh. A at 12).  Thus, the decision to medicate Plaintiff was made by medical

20   professionals under assumably fair procedural mechanisms, as Plaintiff has not alleged the

21   Forced Med Panel did not meet the requirements of due process.  Furthermore, the records

22   shows that, to date, Plaintiff has not received any forced medication despite being authorized

23   by medical professionals  (*Id*.).  Accordingly, Plaintiff has failed to state a Fourteenth

24   Amendment Due Process Claim based on being involuntarily medicated and Defendants'

25   request for summary judgment should be **GRANTED**.

26   ///

27   ///

28                                          11

3.      Transfer to ESP

Plaintiff alleges he was denied due process when he was transferred to ESP and placed in administrative segregation after his release from the MHU without being given a medical physical or examination (Doc. #5 at 4).  Defendants argue Plaintiff has no liberty interest in remaining in a particular institution and Plaintiff's transfer to ESP did not violate the Fourteenth Amendment (Doc. #20 at 7).

In general, an inmate has no right to be assigned to any particular institution. *See Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). Nor has he a right to any particular classification. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976).  Nor, for that matter, can an inmate even claim the right to be free from administrative segregation or to be housed with the general prison population. *See Sandin*, 515 U.S. at 485; *Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir. 1991); *Smith v. Noonan* 992 F.2d 987, 989 (9th Cir. 1993).

Under these facts, Plaintiff has failed to show he had a liberty interest entitling him to due process protections in either his classification to administrative segregation at ESP or his transfer to ESP.  Accordingly, Plaintiff has failed to state a Fourteenth Amendment claim and Defendants' request for summary judgment should be **GRANTED**.

///
///
///
///
///
///
///
///
///
///
///

12

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' Motion for Summary Judgment (Doc. #20).

The parties should be aware of the following:

1.      That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED:   July 24, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

13